SO ORDERED.

SIGNED this 7th day of February, 2012.



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge
_____

For on-line use but not for print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| DEBORAH WHITE and CREIGHTON NEIL WHITE, | CASE NO. 10-12804 CHAPTER 13 |
| Debtors. | |
| CREIGHTON NEIL WHITE and DEBBIE A. WHITE, | |
| Plaintiffs, | |
| v. | ADV. NO. 11-5037 |
| ASSET MANAGEMENT HOLDINGS, LLC, and UNITED STATES OF AMERICA, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER ON ISSUES OF
ENFORCEABILITY OF REAFFIRMATION AGREEMENT AND STATUTE OF
LIMITATIONS DEFENSE TO MORTGAGE FORECLOSURE ACTION**

This adversary proceeding filed by Debtors Deborah White[1] and Creighton Neil White seeks a determination of the validity and priority of liens on their homestead located in Arkansas City, Kansas.[2] Asset Management Holdings, LLC (AMH), desires to foreclose its mortgage on the property and to assert personal liability of Debtors on the note secured by the mortgage based upon a reaffirmation agreement approved by the Court in the Whites' prior Chapter 7 case. Plaintiffs White assert that the reaffirmation agreement is void and that AMH is barred from pursuing its foreclosure action by the statute of limitations.

An evidentiary hearing was held on November 22, 2011. Debtors appeared by Martin J. Peck. AMH appeared by Lee E. Velasquez and Orvel Mason of Mason & Velasquez, P.A. Laurie B. Williams, Chapter 13 Trustee, also appeared. There were no other appearances. Following the hearing, the Court took the matter under advisement and is now ready to rule.

For the following reasons, the Court holds: Even though approval of the reaffirmation agreement did not comply with 11 U.S.C. § 524, the order approving the

---

[1] Debtors' Chapter 13 petition gave Ms. White's name as Deborah Ann White (although her middle name did not get entered into the Court's CM-ECF system), but their complaint commencing this proceeding gave it as Debbie A. White.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O). There is no objection to venue or jurisdiction over the parties.

2

Case 11-05037   Doc# 31   Filed 02/07/12   Page 2 of 18

agreement is not void under Federal Rule of Civil Procedure 60(b)(4); to accomplish justice, the order approving the reaffirmation agreement as to Debtor Creighton Neil White is set aside under Rule 60(b)(6); and the statute of limitations does not bar AMH's foreclosure action.

**FINDINGS OF FACT.**

Based upon the stipulations of fact stated in the Pretrial Order,[3] the Court record, and the exhibits admitted at trial, the Court makes the following findings of fact.

On September 13, 1999, the Whites executed a note (Note) promising to pay Gulfstream Financial Services approximately $21,000 in monthly installments, with the final payment due on September 17, 2014. The Note is secured by a mortgage (Mortgage), executed the same date, on Debtors' real property in Arkansas City. AMH is the current holder of the Note and Mortgage.

On January 11, 2002, the Whites filed a voluntary petition in this Court under Chapter 7 of the Bankruptcy Code.[4] On November 12, 2002, counsel for the Whites were permitted to withdraw, and the Whites proceeded *pro se*. On July 24, 2003, Bank One, N.A., to whom Gulfstream Financial had assigned the Note and Mortgage, filed a "Motion for Approval of Reaffirmation Agreement."[5] Copies of the Note and Mortgage, but not the reaffirmation agreement, were attached to the motion. On August 13, 2003,

---

[3] Dkt. 26.

[4] Case No. 02-10116.

[5] *Id.*, dkt. 75.

Bank One filed a notice of a hearing to be held on September 11, 2003.[6] Attached to the notice is a copy of a document titled "Reaffirmation Agreement Secured by Real Property" (Agreement), signed by counsel for Bank One but not signed by either of the Debtors. A provision in the middle of this Agreement states, "[P]ursant to Section 524(c)(6)(B), since the indebtedness which Debtor is [sic] agreeing to reaffirm is secured by real property, this Reaffirmation Agreement need not be approved by the Court."[7] Although the Agreement recites that copies of the Note and the Mortgage are attached, the filed document does not include the attachments.

    A reaffirmation and discharge hearing was held on September 11, 2003. Debtor Deborah White appeared at the hearing, but Debtor Creighton White did not.[8] At the hearing, three reaffirmation agreements were before the Court. Deborah White was advised by the Court that the agreements were not required by the Bankruptcy Code, and was advised of the legal effect of reaffirmation and of defaulting on such agreements. All three reaffirmations were orally approved. On November 3, 2003, an order approving the Agreement, prepared by counsel for Bank One, was signed by the Court and filed (Order). Both Debtors, as well as counsel for Bank One, signed the Order.[9] The Agreement was not attached to the Order. The record of Debtors' 2002 Chapter 7 case

---

[6] *Id.*, dkt. 76.

[7] *Id.*, dkt. 76, attached Agreement at 3, ¶ 6.

[8] *See id.*, dkt. 81.

[9] *Id.* dkt. 85.

does not include a copy of the Agreement signed by Debtors, or a copy of the Agreement with the Note and Mortgage attached. An order of discharge was entered on January 13, 2004.[10] On September 25, 2007, the final decree was signed, and the case was closed.

No payments have been made on the Note since at least July 2002, over a year prior to the motion to approve the Agreement. On February 2, 2010, counsel for AMH, by letter, advised Debtors of the payment deficiency and AMH's intent to accelerate the Note, subject to a right to cure by payment of $21,024.64 by February 23, 2010. On March 29, 2010, AMH initiated a foreclosure action against Debtors in Cowley County, Kansas, District Court.

Debtors' 2002 Chapter 7 case was reopened, and on April 20, 2010, a notice of removal of the Cowley County foreclosure action to this Court was filed in the reopened case. The removed case was assigned Adversary No. 10-5084. On June 25, 2010, Debtors filed a motion for judgment on the pleadings raising the issues of the validity of the Agreement and the running of the statute of limitations on the Note and Mortgage,[11] the same issues as are presently before the Court in this adversary proceeding.

On August 18, 2010, Debtors filed a voluntary petition under Chapter 13, Case No. 10-12804. On February 8, 2011, Debtors filed two adversary actions in the Chapter 13 proceeding. The first, the case in which this opinion is filed, is Adv. No. 11-5037, commenced by Debtors' complaint to determine the validity and priority of liens against

---

[10] *Id*. dkt. 87.

[11] Adv. No. 10-5084, dkt. 15.

their property. The second is Adv. No.11-5038, commenced by a second notice of removal of the Cowley County foreclosure action.

**ANALYSIS.**

**A. The Order approving the Agreement cannot be set aside under Federal Rule of Civil Procedure 60(b)(4).**

Debtors contend that the Order approving the Agreement should be set aside under Federal Rule of Civil Procedure 60(b)(4)[12] as a void judgment because the Agreement did not comply with 11 U.S.C. § 524(c)[13] and the Court's procedure in approving the Agreement did not comply with § 524(d). AMH contends the Agreement is binding.

**1. The Agreement approved by the Court did not comply with § 524.**

This case requires the Court to consider the law applicable to reaffirmation agreements in 2003, prior to the addition of significant debtor protections by BAPCPA, enacted in 2005.[14] The controlling statute was § 524(c) and (d), most parts of which were applicable to the reaffirmation of a consumer debt secured by real property when the debtor was not represented by counsel when negotiating the agreement. Since the Order approving the Agreement was filed in 2003, only subsection (c)(2) has been amended. In 2003, subsection (c) provided in relevant part:

---

[12] Future references to the Federal Rules of Civil Procedure in the text shall be to Rule __. With some exceptions not involved here, Fed. R. Bankr. P. 9024 makes Rule 60 apply to cases under the Bankruptcy Code.

[13] Future references to Title 11 in the text shall be to the section only.

[14] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

6

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if —

> (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
>
> (2)   (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded . . . ; and
>
>     (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
>
> (3) such agreement has been filed with the court . . . ;
>
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court . . . ;
>
> (5) the provisions of subsection (d) of this section have been complied with;
>
> (6)   (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as —
>
>       (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
>
>       (ii) in the best interest of the debtor.
>
>     (B) Subparagraph (A) shall not apply to the extent that such a debt is a consumer debt secured by real property.

7

In 2003, as it does now, subsection (d) provided in relevant part:

> (d) . . . if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall —
>
> (1) inform the debtor —
>
> (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and
>
> (B) of the legal effect and consequences of—
>
> (i) an agreement of the kind specified in subsection (c) of this section; and
>
> (ii) a default under such an agreement.

Debtors contend that the Agreement is not in compliance with § 524(c) because they never signed the Agreement and the Agreement is incomplete. The Court agrees that § 524(c) contemplated that the debtor sign a reaffirmation agreement. Pre-BAPCPA authority addressing whether a reaffirmation agreement must be signed by all of the parties is scarce. The statute was silent. Before 2005, the Seventh Circuit held that a creditor's signature was required, and the debtor could not unilaterally present a reaffirmation agreement for court approval.[15] It reasoned that the Code envisioned a voluntary "agreement" between a creditor and a debtor, and agreed with the bankruptcy

---

[15] *In re Turner*, 156 F.3d 713 (7th Cir. 1998).

8

court's belief that "the creditor's signature provides the most ready and concrete indicium that the creditor is aware of the reaffirmation and that creditor and debtor alike have assented to its terms."[16] The circuit noted that bankruptcy forms and many local rules required both creditor and debtor signatures.

The Seventh Circuit's reasoning fully supports the view that even before BAPCPA, the Code required the signatures of the debtor or debtors on the filed copy of a reaffirmation agreement. The Code required that the agreement be filed; unless there were signatures on the filed agreement, neither the Court nor other interested parties could be certain that the filed agreement represented in fact an agreement to which the debtor and creditor agreed.

The Court also agrees that the Agreement as filed was incomplete. Although it recites that copies of the Note and Mortgage are attached, there are no attachments to the filed document. Since the body of the Agreement fails to state the terms of the obligation reaffirmed, the attachments are necessary to define Debtors' obligations.

In addition to the foregoing areas of noncompliance with § 524 raised by Debtors, the Court notes that the Agreement fails to include clear and conspicuous statements advising Debtors of their right to rescind and that such an agreement was not required. This information is included in the Agreement, but it is not "clear and conspicuous," as was required by § 524(c)(2)(A) and (B).

---

[16] *Id.* at 720.

The Court notes that the Agreement misstates applicable law as to the role of the Court. It states that because the debt being reaffirmed is secured by real property, "this Reaffirmation Agreement need not be approved by the Court." Although § 524(c)(6)(B) provided that for such debts, the Court need not find that the agreement imposed no undue hardship and was in the best interests of the debtor, the Court was not removed from the reaffirmation process. Section 524(c)(5), as a condition for approval of reaffirmation agreements, required compliance with § 524(d). Section 524(d) provided that when a debtor was not represented by counsel, "the court *shall* hold a hearing at which the debtor *shall* appear in person," and at such hearing "(1) *shall* . . . inform the debtor (A) that such an agreement is not required . . . ; and (B) of the legal effect and consequences of (i) [the] agreement . . . ; and (ii) a default under [the] agreement." The Agreement did not so inform Debtors and was misleading as to the role of the Court.

The Court also agrees with Debtors that the reaffirmation procedure did not comply with § 524(d) since Debtor Creighton White was not present at the reaffirmation and discharge hearing. The subsection expressly required such attendance so the Court could inform the debtor that the agreement was not required, and of the legal effect and consequences of a reaffirmation agreement and default under such an agreement.

**2. The legal error of the Court in approving the Agreement in violation of § 524 does not render the Order void under Rule 60(b)(4).**

Debtors contend that the foregoing errors render the Agreement void such that it should be set aside under Rule 60(b)(4), made applicable in bankruptcy proceedings by

10

Bankruptcy Rule 9024.[17] Rule 60(b)(4) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" because "the judgment is void."

A judgment is void under Rule 60(b)(4) "'only if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law.'"[18] It is a common error to think that a court order is void when a mistake has been made, "[b]ut 'a judgment is not void merely because it is erroneous.'"[19]

This construction of Rule 60(b) was applied in a bankruptcy case by the Supreme Court in *Espinosa*.[20] Espinosa, a Chapter 13 debtor, had obtained confirmation of a plan

---

[17] In addition to briefing this issue, Debtors "hedge their bets" by stating they have not "researched the question of whether the order approving the reaffirmation agreement is final for purposes of Rule 60(b)," suggesting that it is "at least possible that the reopening of [Debtors' prior Chapter 7] case rendered all interlocutory orders, including the order approving the un-executed reaffirmation agreement, non-final, and subject to revision by the Court without reference to Rule 60(b)." Dkt. 28 at 4, n.2. No authorities are provided.

The Court finds that Rule 60(b)(4) applies to Debtors' attempt to have the Order approving the Agreement set aside. Bankruptcy Rule 9024 provides that "Rule 60 F.R. Civ. P. applies in cases under the Code," subject to exceptions not applicable here. The 1983 Advisory Committee Note to Bankruptcy Rule 9024 states, "For the purpose of this rule all orders of the bankruptcy court are subject to Rule 60 FR Civ P." *Collier on Bankruptcy* states that Rule 60(b) applies to administrative orders, characterized as "[o]rders entered in the absence of adversary parties, informally and sometimes without notice or hearing." 10 *Collier on Bankruptcy*, ¶ 9024.06. A hearing for approval of a reaffirmation agreement which has been stipulated to by the creditor and the debtor is primarily administrative. 11 *Norton Bankruptcy Law and Practice*, Rule 4008, Editors' Comment at 361 (William L. Norton, Jr., author and ed.-in-chief, & William L. Norton III, author and managing ed., 3d ed. 2011).

[18] *U.S. v. Buck*, 281 F3d 1336, 1344 (10th Cir. 2002) (*quoting In re Four Seasons Secs. Laws Litig.*, 502 F.2d 834, 842 (10th Cir. 1974)).

[19] *Id*.

[20] *United Student Aid Funds, Inc., v. Espinosa*, ___ U.S. ___, 130 S.Ct. 1367 (2010).

11

proposing to repay only the principal of his student loan debt and to discharge accrued interest, despite having never initiated an adversary proceeding nor obtained an undue hardship determination. When three years post-confirmation, the creditor intercepted the debtor's income tax refunds to satisfy the unpaid portion of the loan, Espinosa petitioned for an order holding his student loan creditor in contempt for violating the discharge injunction. The creditor cross-claimed for relief from the confirmation order that had been entered in violation of the Code provisions regarding discharge of student loan debts. The Court held that relief was not available under Rule 60(b)(4). "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."[21] It rejected the position that the bankruptcy court's confirmation order was void because the court lacked statutory authority to confirm Espinosa's plan absent a finding of undue hardship, as required by § 523(a)(8). The Court stated, "We are not persuaded that a failure to find undue hardship in accordance with § 523(a)(8) is on par with the jurisdictional and notice failings that define void judgments that qualify for relief under Rule 60(b)(4)."[22]

The reasoning of *Espinosa* is applicable there. The Court committed error when not requiring compliance with § 524(c) and (d) before entering the Order approving the Agreement, but the error did not render the Order void. Nothing in § 524 limits

---

[21] *Id*. at 1377.

[22] *Id*. at 1379.

12

jurisdiction to approve a reaffirmation agreement. The stringent requirements for approval of reaffirmation agreements mean that the Court must make the findings and advise the debtor even if neither party requests it to do so. The order approving the Agreement is not void under Rule 60(b)(4).

Debtors cite several cases in support of the proposition that reaffirmation agreements that do not comply with § 524(c) and (d) are "void and unenforceable."[23] The first case, *Getzoff*,[24] affirmed a bankruptcy court ruling that a postpetition guaranty executed by the Chapter 7 debtor was not enforceable because no attempt had been made to obtain court approval or otherwise comply with the reaffirmation standards. In the second case, *Laynas*,[25] a reaffirmation agreement was not approved because of concerns about undue hardship. The third case is similar to *Laynas*. In *Hovestadt*,[26] a reaffirmation agreement could not be approved because the debtor's attorney's affidavit was stricken, thereby rendering the agreement unenforceable. In both *Laynas* and *Hovestadt*, the bankruptcy court denied the motion to approve the proposed reaffirmation agreement, and therefore the agreements were declared void and unenforceable, even though they had been signed by the parties.

The Court finds these cases stand for the proposition that a reaffirmation

---

[23] Dkt. 28, at 4-5.

[24] *Republic Bank of California, N.A., v. Getzoff (In re Getzoff )*, 180 B.R. 572, 573-75 (9th Cir. BAP 1995).

[25] *In re Laynas*, 345 B.R. 505, 513-17 (Bankr. E.D. Pa. 2006).

[26] *In re Hovestadt*, 193 B.R. 382, 385-87 (Bankr. D. Mass. 1996).

13

agreement (not the order approving the agreement) is void and unenforceable as a matter of bankruptcy law if not approved by the Court, even though it might have been valid under state law. None of Debtors' cases address the enforceability of an order approving a reaffirmation agreement where the debtor later moved to set aside that order under Rule 60(b). The issue here is whether the Order is void, not whether the Agreement would have been void if not approved by the Court.

**B. Because of the extraordinary circumstances of this case, the Court relieves Debtor Creighton White from the Order under Rule 60(b)(6).**

Rule 60(b)(6) authorizes the Court to relieve a party from a final judgment or order for "any other reason that justifies relief." The Tenth Circuit has "recognize[d] that relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances."[27] But the Circuit has "also stated that 'the rule should be liberally construed when substantial justice will thus be served.'"[28]

The Court finds that substantial justice will be served if the Order approving the Agreement is set aside as to Debtor Creighton White. The numerous instances of noncompliance with § 524(c) and (d) with respect to the approval of the Agreement are discussed above and will not be repeated here. The cumulative effect of these Code violations constitutes extraordinary circumstances. Of these many errors, the Court finds most egregious the fact that the agreed Order approving the Agreement was submitted for

---

[27] *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006).

[28] *Id.* (*quoting Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (*en banc*)).

14

court approval even though only Debtor Deborah White, and not Debtor Creighton White, was present at the reaffirmation and discharge hearing. The statutory requirement that unrepresented debtors appear before the Court to be informed that a reaffirmation agreement is not required and of the legal effect and consequences of such an agreement is not a mere formality. The hearing provides unrepresented debtors with crucial information about their rights and the consequences of actions requested by creditors. "Bringing reaffirmation agreements into the light of open court at the discharge hearing thus has an antiseptic effect on any undue creditor pressure."[29] When this failure is considered in light of the numerous other violations, the Court is convinced that justice requires the Order be set aside as to Debtor Creighton White.

### C. The statute of limitations does not bar AMH's foreclosure action.

Debtors argue that the statute of limitations bars AMH from enforcing its lien since the last payment on the Note was made nearly 10 years before the March 29, 2010, filing of the foreclosure action. AMH contends that its action is timely. AMH also responds that even if the Court finds no valid reaffirmation agreement, the discharge granted to Debtors only extinguished their personal liability, and AMH is still entitled to foreclose its consensual lien.

The Court first addresses what state law rights AMH holds against Debtors. First, because the Order approving the Agreement is not void for purposes of Rule 60(b)(4) but

---

[29]*Arnhold v. Kyrus*, 851 F.2d 738, 741 (4th Cir. 1988).

is subject to being set aside under Rule 60(b)(6) as to Debtor Creighton White, Debtor Deborah White has not been discharged from her personal liability on the Note and Debtor Creighton White has been discharged from his personal liability. Second, there is no basis to avoid the lien granted by the Mortgage. As to Debtor Creighton White, the lien remains, even though he is not personally liable on the debt it secures.[30]

The parties agree that the applicable statute of limitations is five years.[31] The question is when the five years began to run. Kansas law is well settled on this issue, and is as follows:

> Kansas courts have recognized that the acceleration clause in a note or mortgage dictates when a foreclosure action accrues for purposes of the statute of limitations. If the clause provides that the entire debt becomes due on the failure to make payments, the statute of limitations begins to run with the default. *Miles v. Hamilton,* 106 Kan. 804, 806, 189 P. 926 (1920). However, if the clause provides the holder of the note with the option to mature the entire debt upon default, the statute of limitations does not begin to run until the holder exercises the option to accelerate the entire amount. *Kennedy v. Gibson*, 68 Kan. 612, 617, 75 P. 1044 (1904). If the holder elects not to exercise the option upon default, "the statute would not run earlier than the time originally fixed for the maturity of the note." 68 Kan. at 617[, 75 P. 1044].[32]

In this case, the Note matures on September 17, 2014, but both the Note and the Mortgage provide the holder of the Note with the option to mature (accelerate) the entire

---

[30] *See Johnson v. Home State Bank*, 501 U.S. 78, 82-88 (1991).

[31] K.S.A. 60-511.

[32] *FGB Realty Advisors, Inc. v. Keller*, 22 Kan. App.2d 853, 854, 923 P.2d 520, 521 (1996).

16

debt upon default. The Note provides that Debtors shall be in default if the monthly payments are not made timely. It further provides, "If I am in default for 10 days, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount." The Mortgage provides that after default and prior to acceleration, the lender shall provide the borrower with notice that, among other things, informs the borrower that "failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property."

Because there are discretionary acceleration clauses in the Note and Mortgage, under Kansas law as quoted above, the five-year statue of limitations does not begin to run until the holder exercises the option to accelerate the entire amount. The stipulated facts establish that no payments have been made on the Note since at least July 1, 2002. But there is no evidence that any notice of intent to accelerate was given to Debtors prior to a letter to them sent by counsel for AMH dated February 2, 2010. That letter gave Debtors until February 23, 2010, to cure the default and stated that failure to cure "will result in acceleration of the full amount due and judicial action to enforce the indebtedness through foreclosure of the Mortgage."

The five-year statute of limitations did not commence to run until the acceleration in 2010. The foreclosure action was timely filed.

17

**CONCLUSION.**

For the foregoing reasons, the Court denies Debtors' request under Rule 60(b)(4) for relief from the Order approving the Agreement reaffirming their personal liability on the Note, but grants relief from the Order as to Debtor Creighton White under Rule 60(b)(6). The Court also finds that the foreclosure action by AMH against Debtors was timely filed.

**IT IS SO ORDERED.**

# # #